**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 18-cv-00664-CMA-MEH

JULIO BALTIERRA,

      Plaintiff,

v.

ADAMS COUNTY, COLORADO, a government entity,
SHERIFF MICHAEL MCINTOSH, in his official and individual capacity,
GARY RUSSELL, in his individual capacity,
JOHN WEINSTEIN, in his individual capacity,
JOSHUA WRIGHT, in his individual capacity,
PATRICK DEAL, in his individual capacity,
ADAM MOHR, in his individual capacity,
ADAN HOLGUIN, in his individual capacity,
GARY BROWN, in his individual capacity,
JAMES CASTELLANO, in his individual capacity,
DOMINIC ROMERO, in his individual capacity,
BRANDON SKALAK, in his individual capacity,
RYAN ENDRES, in his individual capacity,
CORIZON HEALTH, INC.,
BENJAMIN CLOWER, in his individual capacity,
STEPHANIE OSTROM, in her individual capacity,
BARBARA WISNIESKA, in her individual capacity,
JAMES FRONCEK, in his individual capacity,
TARA YELLOW, in her individual capacity,
TIFFANY JONES, in her individual capacity,

      Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS**

---

This matter comes before the Court on Defendants' Motions to Dismiss (Doc. ## 39, 40.) Both Motions are fully briefed. (Doc. ## 54–57.) For the reasons that follow, the Court grants both Motions.

## **BACKGROUND**

On March 20, 2016, Plaintiff began serving a criminal sentence for DUI and careless driving at the Adams County Detention Facility. (Doc. # 4 at 2.) That morning, at approximately 4:00 a.m., Plaintiff woke up to a sharp pain in his right buttock. (*Id.*) Plaintiff alleges that he had a pimple-sized bite mark on his buttock. Seeking assistance, he contacted Defendants Russell, Weinstein, and Wright. (*Id.* at 10.) Plaintiff was then informed that "if it's not a life or death issue we are not sending you down [to the nurse's station.]" (*Id.*)

Around 11:00 a.m., Plaintiff contacted Defendants Deal, Mohr, and Holguin, and again complained of his worsening pain. (*Id.* at 11.) At that time, the bump had grown to the size of a fifty-cent piece. (*Id.*) Plaintiff was told again that "if it's not a life or death issue we are not sending you down [to the nurse's station.]" (*Id.*) Throughout the evening of March 20, 2016, Plaintiff complained to Defendants Russel, Weinstein, and Wright as they periodically did their rounds. (*Id.*) Plaintiff's requests for assistance were unsuccessful. (*Id.*)

On March 21, 2016, Plaintiff complained about his pain again to Defendants Deal, Mohr, and Holguin. (*Id.*) Defendants Deal, Mohr, and Holguin then escorted Plaintiff to see Defendant Froncek in the nurse's station. (*Id.*) When Plaintiff lowered his pants to show Defendant Froncek the injury, Froncek allegedly laughed, as did

Defendants Deal, Mohr, and Holguin. (*Id.*) Defendants Castellano and Romero were posted in the medical facility at that time and Plaintiff believes they witnessed the event. (*Id.* at 11–12.) Plaintiff asserts that throughout the evening of March 21, he unsuccessfully pleaded with Defendants Russell, Weinstein, and Wright to be taken back to medical as the bump continued to grow. (*Id.* at 12.)

On the morning of March 22, Plaintiff discovered the injury had grown to the size of a softball. (*Id.*) He complained again to Defendants Russell, Weinstein, and Wright about his injury. (*Id.*) Plaintiff was later taken to medical and examined by Defendant Yellow, who noted a 1.5 inch by 1.5 inch bump on his buttock. (*Id.*) At that time, Plaintiff was prescribed an antibiotic and painkillers by Defendant Clower, and Defendant Clower also requested for a specimen to be collected for further testing. (*Id.*) Following Defendant Clower's order of antibiotic treatment, Defendant Wisnieska attempted to administer the antibiotic to Plaintiff. (*Id.*) Defendant Wisnieska was allegedly unable to find a vein and, therefore, did not administer the medication. (*Id.*) Plaintiff claims Defendant Wisnieska told Plaintiff that she "doesn't have time for you" and threw the IV bag at him. (*Id.* at 13.) Plaintiff believes Defendants Endres and Skalak were posted in medical at that time and witnessed the event, but took no action. (*Id.*)

On the morning of March 23, Plaintiff's cellmates contacted the medical emergency line and stated Plaintiff was having chest pains so that he would be sent to medical. (*Id.*) Defendants Russell, Weinstein, and Brown responded, and Plaintiff was examined by Defendant Ostrom. (*Id.*) Defendant Clower ordered a second dose of

antibiotics to be administered and Defendant Ostrom reported that it was administered. (*Id.*)

That afternoon, Defendant Froncek reported that despite the administration of an IV, Plaintiff's condition was worse and Plaintiff needed to go to the hospital. (*Id.*) Defendant Jones then completed a history and physical with Plaintiff, and Defendant Wisnieska reported that Plaintiff was being sent to the emergency room for wound care. (*Id.*) As a result of the infection, Plaintiff's right buttock had to be amputated to remove the necrotic tissue. (*Id.* at 14.)

Plaintiff asserts four claims against the various Defendants: (1) failure to provide medical care and treatment; (2) municipal liability; (3) supervisory liability for failure to train and supervise; (4) and medical negligence causing serious bodily injury.

Defendants Sheriff Michael McIntosh, Gary Russell, John Weinstein, Joshua Wright, Patrick Deal, Adam Mohr, Adan Holguin, Gary Brown, James Castellano, Dominic Romero, Brandon Skalak, Ryan Endres, and Adams County, Colorado ("County Defendants") filed a Motion to Dismiss on July 24, 2018. (Doc. # 39.) Plaintiff filed a Response (Doc. # 54) on October 3, 2018, and the County Defendants filed a Reply (Doc. # 56) on October 17, 2018.

Additionally, Defendants Corizon Health, Inc., Benjamin Clower, Stephanie Ostrom, Barbara Wisnieska, James Froncek, and Tiffany Jones ("Corizon Defendants") filed a Motion to Dismiss on July 24, 2018. (Doc. # 40.) The Corizon Defendants are not moving for dismissal of Plaintiff's negligence claims at this time, but they are seeking dismissal of the deliberate indifference and municipal liability claims. (*Id.* at 3.) Plaintiff

filed a Response (Doc. # 55) on October 3, 2018, and the Corizon Defendants filed a Reply on October 17, 2018. (Doc. # 57.)

**LEGAL PRINCIPLES**

**Rule 12(b)(6)**

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test "the sufficiency of the allegations within the four corners of the complaint." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). A complaint will survive such a motion only if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a motion to dismiss, "[t]he question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." *Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009). The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

In reviewing a Rule 12(b)(6) motion, a court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff." *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991). Nevertheless, a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

# I.  ANALYSIS

Plaintiff brings claims of deliberate indifference against all Defendants. Plaintiff's municipal liability claims apply specifically to the County Defendants and Defendant Corizon Heath, Inc. Plaintiff's supervisory liability claim for failure to train and supervise is only against Defendant Sheriff Michael McIntosh.

## A.  DELIBERATE INDIFFERENCE

### 1.  Law

Deliberate indifference to the serious medical needs of prisoners violates the Eighth Amendment. *Redmond v. Crowther*, 882 F.3d 927, 939 (10th Cir. 2018) (citing *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976)). Such a claim involves an objective component and a subjective component. *Redmond*, 882 F.3d at 939; *see Self v. Crum*, 439 F.3d 1227, 1230–31 (10th Cir. 2006). The objective component requires showing the alleged injury is "sufficiently serious." *Crum*, 439 F.3d at 1230. For example, a "lifelong handicap, permanent loss, or considerable pain" may satisfy the substantial harm requirement. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

Under the subjective inquiry, a plaintiff must establish that the defendant had a "sufficiently culpable state of mind." *Crum*, 439 F.3d at 1230–1231; *see Farmer v. Brennan*, 511 U.S. 825, 834 (1994). In describing the subjective component, the Supreme Court made clear that a prison official cannot be liable "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*.; *Farmer*, 511 U.S. at 837.

The subjective component is akin to "recklessness in the criminal law," where, to act recklessly, a "person must 'consciously disregard' a substantial risk of serious harm." *Id*.; *Farmer*, 511 U.S. at 837, 839 (quoting Model Penal Code § 2.02(2)(e)). Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration by, *inter alia*, an inference from circumstantial evidence. *Id.* For example, the fact that a serious medical need was "obvious" could be evidence of deliberate indifference, although a "prison official may show that the obvious escaped him" and avoid liability. *Id*.; *Farmer*, 511 U.S. at 843 n.8.

Tenth Circuit cases have shown that the subjective component is not satisfied, absent an extraordinary degree of neglect, where a doctor merely exercises his considered medical judgment. *Id.* at 1232. Matters that traditionally fall within the scope of medical judgment are decisions such as whether to consult a specialist or undertake additional medical testing. *Id.* Additionally, the "negligent failure to provide adequate medical care, even one constituting medical malpractice, does not give rise to a constitutional violation." *Id.* at 1233 (quoting *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 811 (10th Cir. 1999)). So long as a medical professional provides a level of care consistent with the symptoms presented by the inmate, absent evidence of actual knowledge or recklessness, the requisite state of mind cannot be established. *Id.* A doctor's culpable state of mind is not established even if the doctor's medical judgment may have been objectively unreasonable. *Id.* at 1234; *see Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000).

Finally, the Tenth Circuit has held that a prison health official who serves "'solely . . . as a gatekeeper for other medical personnel capable of treating the condition' may be held liable under the deliberate indifference standard if she 'delays or refuses to fulfill that gatekeeper role.'" *Crum*, 439 F.3d at 1232 (quoting *Mata*, 427 F.3d at 751). In short, the subjective component presents a high evidentiary hurdle to plaintiffs: a prison official must know about and disregard a substantial risk of serious harm. *Id.*; *see also Mata*, 427 F.3d at 752.

    2.    <u>Application</u>

        *a.    County Defendants*

Plaintiff asserts claims of deliberate indifference to his known serious medical needs in violation of his Fourteenth Amendment rights against all Defendants. (Doc. # 4 at 26–28.) As explained above, to succeed on a deliberate indifference claim the prisoner must prove an objective component and a subjective component. *Redmond*, 882 F.3d at 1230. For the purposes of the instant Motions the Court will assume, *arguendo*, that Plaintiff's injury is "sufficiently serious," *Crum*, 439 F.3d at 1230, and, therefore, meets the objective component of the two-part deliberate indifference test.

To meet the subjective component of the test, Plaintiff must allege sufficient facts to establish that each individual Defendant had a culpable state of mind. *See Id.* at 1230–1231. That is, each individual knew of the seriousness of Plaintiff's medical issue and, nevertheless, acted deliberately indifferent to Plaintiff's medical needs. Viewing the facts in the light most favorable to Plaintiff, he fails to plead facts sufficient to meet the subjective component.

Regarding the County Defendants, Plaintiff admits that he cannot support each element of the claim against each Defendant because "in his distress, he was not committing the names on their name tags to memory." (Doc. # 54 at 5.) Even if Plaintiff could specifically attribute his allegations to individual County Defendants, Plaintiff's pleadings fail to allege that the County Defendants knew Plaintiff was suffering a serious medical issue and failed to act accordingly. Plaintiff had a small insect bite on his buttock, and he complained of pain to various County Defendants. The County Defendants could not have known how severe Plaintiff's injury was. The injury was not visible to them, nor is an insect bite usually a severe injury.

Plaintiff states he was told, "if his medical complaint is a not life or death medical issue they would not send him to the nurse's station." Plaintiff states that he asked at every opportunity to be taken to medical and that his complaints were ignored. However, Plaintiff was taken to see medical staff by the County Defendants multiple times for the insect bite on his buttock. The County Defendants cannot be expected to respond to every complaint a prisoner makes by taking the prisoner to the medical facility. Plaintiff fails to point out any case law that would require the County Defendants to respond to every complaint made by a prisoner in such a fashion, especially after that prisoner has already been seen and released by medical.

Further, nowhere in Plaintiff's pleading does he address the County Defendants' culpable state of mind. Accordingly, Plaintiff's conclusory statements fail to overcome the "high evidentiary hurdle" set forth in *Crum* and *Mata* with respect to any of the County Defendants.

### b.    Corizon Defendants

As with the County Defendants, Plaintiff's allegations fail to establish the requisite culpable state of mind and are similarly insufficient to support a claim of deliberate indifference.

Many of Plaintiff's allegations are conclusory statements that do not give rise to a claim of deliberate indifference. For example, Plaintiff states that Defendant Froncek's laughter when Plaintiff lowered his pants to show his injury "exhibited deliberate indifference to Plaintiff's serious medical condition." (Doc. # 55 at 5.) While laughing at an insect bite on Plaintiff's buttock may be disrespectful or unprofessional, it does not show that Defendant Froncek was subjectively aware of a serious medical condition and then disregarded a risk of substantial harm. Plaintiff asserts that because of his "obvious distress" when exposing his buttock to display his injury, this somehow indicated an "obvious risk" that was ignored. (*Id.*) However, Plaintiff fails to cite any case law that supports such a proposition.

Plaintiff claims that Defendant Clower was deliberately indifferent because he never personally examined Plaintiff. (*Id.* at 6.) This assertion is also unsupported by any authority. What Defendant Clower did do, however, was prescribe antibiotic treatment and further testing. (Doc. # 4 at 12.) Plaintiff concedes that antibiotics were the proper course of treatment for his medical condition. (*Id.* at 14.) But even if that were the improper course of treatment, a doctor's culpable state of mind is not established even if the doctor's medical judgment may have been objectively unreasonable. *Crum*, 439 F.3d. at 1234 (noting that both an inadvertent failure to provide adequate medical care

and a complaint that a physician has been negligent in diagnosing or treating a medical condition are insufficient to state a deliberate indifference claim).

Plaintiff also alleges that he never received his doses of the antibiotics that two separate nurses were to administer. While there is some inconsistency in Plaintiff's allegations as to whether or not he received a second dose of antibiotics, for the purposes of this Motion that does not matter.[1] Even if the nurses did not administer the ordered doses of antibiotic, Plaintiff still fails to allege that either of the Defendants tasked with giving him the antibiotic had a culpable mindset. *See Zentmyer v. Kendall Cty., Ill.*, 220 F.3d 805, 812 (7th Cir. 2000) (citing *Mahan v. Plymouth Cty. House of Corr.*, 64 F.3d 14, 18 (1st Cir. 1995) (finding failure to administer prescription medication did not constitute deliberate indifference absent evidence that prison officials knew the plaintiff would suffer serious medical consequences without medication)).

In sum, because Plaintiff's allegations fail to support his claim of deliberate indifference against any Defendant, Plaintiff's First Claim for Relief must be dismissed.

## B.   MUNICIPAL LIABILITY

### 1.   Law

The County may be held liable under 42 U.S.C. § 1983 only for its own unconstitutional or illegal policies and not for the tortious acts of its employees. *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998) (citing *Monell v. Dep't of Soc. Servs.*,

---

[1] Plaintiff is inconsistent in his allegations, initially stating, "[Plaintiff] denies being administered a second dose of Vancomycin *immediately*." (Doc. # 4 at 13) (emphasis added). However, Plaintiff also asserts that "Nurse Ostrom . . . failed to administer the second ordered dose of antibiotic . . ." at all. (Doc. # 55 at 7.)

436 U.S. 658, 694 (1978)). The Supreme Court has held that a municipality is liable only when the official policy is the "moving force" behind the injury alleged. *Id.* That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and deprivation of federal rights. *Id.*; *see Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 770 (10th Cir. 2013); *see Monell* 436 U.S. at 694.

The official policy requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible. *Id.*; *see Pembaur v. City of Cincinnati*, 475 U.S. 469, 479 (1986). A challenged practice may be deemed an official policy or custom for § 1983 municipal liability purposes if it is a formally promulgated policy, a well-settled custom or practice, a final decision by a municipal policymaker, or deliberately indifferent training or supervision. *Id.*

Furthermore, in *City of Canton v. Harris*, the Supreme Court held that municipal liability based on a policy of inadequate training requires proof of the municipality's "deliberate indifference" to its inhabitants—i.e., the failure to train must "reflect [] a 'deliberate' or 'conscious' choice by a municipality." *Pulsipher*, 143 F.3d at 1307 (citing *City of Canton v. Harris*, 489 U.S. 378 (1989)). A finding of deliberate indifference

requires a showing that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the City can reasonably be said to have been deliberately indifferent to the need." *Brown v. Gray*, 227 F.3d 1278, 1288 (10th Cir. 2000) (quoting *Harris*, 489 U.S. at 390). The touchstones of this inquiry, therefore, are the risk inadequate training poses and the city's awareness of that risk. *Id.* at 1288–89.

2.   Application

In order to prevail on his constitutional claim against the County Defendants, Plaintiff must establish first that there was a constitutional violation committed by a municipal employer, and second, that a municipal policy or practice was the "moving force behind the deprivation." *Rigg v. City of Lakewood*, 37 F. Supp. 3d 1207, 1211 (D. Colo. 2014); *see Myers v. Bd. Of Cnty. Comm'rs of Oklahoma City*, 151 F.3d 1313, 1316 (10th Cir. 1998). In order to establish the latter element, a plaintiff must show both the existence of a municipal custom or policy and a direct and causal link between the custom or policy and the violation alleged. *Id.*; *see Jenkins v. Wood*, 81 F.3d 988, 993 (10th Cir. 1996).

There are five principal ways a plaintiff may establish the existence of a municipal policy or custom: (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice; (3) the decisions of employees with final policymaking authority; (4) the ratification by final policymakers of the decisions of subordinates; and (5) the failure to adequately train or supervise employees, so long as

that failure results from deliberate indifference to the injuries that may be caused. *Id.* at 1211–12, *see Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010).

In the present case, Plaintiff concedes he cannot point to an official municipal policy or custom that lead to his injury. (Doc. # 54 at 9.) Plaintiff relies on the second way of establishing the existence of a municipal policy or custom, arguing that is well-settled within the Adams County Detention Facility that inmates are not to receive medical treatment unless their medical needs are a matter of life or death. (*Id.*) However, there is no meaningful evidence that either the County Defendants or the Corizon Defendants had such a policy, and Plaintiff does not raise any specific allegations of how there was a failure to train employees.

Regarding the County Defendants, Plaintiff alleges that because he was told twice by Adams County Sheriff's Deputies that he would not be taken to see medical unless his injuries were a life and death issue, there must be some unwritten policy or custom. (Doc. # 4 at 10.) Plaintiff's conclusory allegations do not amount to showing that there was some unwritten policy or custom. The unwritten policy must be so permanent and well-settled as to constitute a "custom or usage" with the force of law, and two remarks from Sheriff's Deputies do not justify an inference of a well-settled policy or custom. *Monell*, 436 U.S. at 691. Moreover, Plaintiff was in fact taken to see medical personnel for an injury that was seemingly not a matter of life or death—an insect bite on his buttock that was the size of a fifty-cent piece—which refutes the proposition that a policy existed as Plaintiff alleges. (Doc. # 4 at 11.)

Plaintiff also fails to assert a direct causal connection with regard to the County Defendants. The County Defendants took Plaintiff to the medical facility, where he received treatment. However, the County Defendants did not directly provide medical care. Thus, there is no indication that the allegedly inadequate care Plaintiff received is attributable to the County Defendants.

Furthermore, Plaintiff fails to allege any policy attributable to the Corizon Defendants at the Adams County Detention Facility. Plaintiff does, however, discuss a number allegations and complaints brought against Corizon Health, Inc. and its predecessor entities. Due to these complaints and allegations nationwide, Plaintiff claims there is a pervasive strategy of denying adequate care to inmates. Listing lawsuits and cases filed against predecessor organizations in various states over the years does not constitute evidence an official policy or custom. Nowhere in the complaint does Plaintiff plead specific facts that would show Corizon Health, Inc. had a policy of refusing to treat inmates at the Adams County Detention Facility.

In sum, because Plaintiff's allegations fail to support his claim of municipal liability against either the County Defendants or the Corizon Defendants, Plaintiff's Second Claim for Relief must be dismissed.

**C.    QUALIFIED IMMUNITY**

1.    <u>Law</u>

Government officials performing discretionary functions are generally shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have

known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)). This doctrine "not only protects public employees from liability, [but] also protects them from the burdens of litigation." *A.M. v. Holmes*, 830 F.3d 1123, 1134 (10th Cir. 2016); *see Allstate Sweeping, LLC v. Black*, 706 F.3d 1261, 1266 (10th Cir. 2013); *Price–Cornelison v. Brooks*, 524 F.3d 1103, 1108 (10th Cir. 2008) (noting that qualified immunity provides "a right not to stand trial in the first place").

The Supreme Court has cautioned lower courts not to define clearly established law too generally. *Pauly v. White*, 874 F.3d 1197, 1208 (10th Cir. 2017); *see, e.g.*, *Mullenix*, 136 S. Ct. at 308. For a right to be clearly established there must be Tenth Circuit or Supreme Court precedent close enough on point to make the unlawfulness of the officers' actions apparent. *Mascorro v. Billings*, 656 F.3d 1198, 1208 (10th Cir. 2011); *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) ("For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." (internal quotation marks omitted)). The Supreme Court has noted there does not need to be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 136 S. Ct. at 308 (internal citation omitted). The dispositive question is whether the violative nature of particular conduct is clearly established, and the inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. *Id.* (internal citations omitted).

After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). "[T]he onus is on the plaintiff to demonstrate '(1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct.'" *A.M.*, 830 F.3d at 1134 (citations omitted). If the plaintiff fails to establish either element, the defendant prevails on the defense. *Id.* at 1134–35; *see, e.g.*, *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877–78 (10th Cir. 2014) ("[T]he 'record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.'").

2.    Application

Plaintiff asserts the constitutional right that was violated was his "right to adequate medical care and to be free from deliberate indifference to serious medical needs." (Doc. # 54 at 8.) This is insufficient for the purposes of overcoming the defense of qualified immunity. The Supreme Court has repeatedly cautioned the lower federal courts against defining clearly established law at a high level of generality. *Mullenix*, 136 S. Ct. at 308. However, Plaintiff's only contention is that his general right to be free from deliberate indifference was clearly established.

Furthermore, Plaintiff points to no Tenth Circuit or Supreme Court precedent that is sufficiently similar to have put the County Defendants on notice that their actions in this specific instance were violative of Plaintiff's constitutional rights.

Because Plaintiff fails identify a statutory or constitutionally established right that was violated and because any alleged right was not "clearly established" at the time of

the challenged conduct, Plaintiff's claims against the County Defendants in their individual capacities must be dismissed.

## D.  SHERRIFF MCINTOSH

### 1.  Law

Supervisory liability under § 1983 allows a plaintiff to impose liability on a defendant-supervisor who creates, promulgates, or implements a policy which subjects or causes the plaintiff to be subjected to the deprivation of any rights secured by the Constitution. *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015). However, this does not equate to liability under a theory of *respondeat superior. Id.*

A plaintiff arguing for the imposition of supervisory liability "therefore must show an 'affirmative link' between the supervisor and the constitutional violation." *Id.* (citation omitted). The requisite showing of an affirmative link between a supervisor and the alleged constitutional injury has three related prongs: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Id.*; *see Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010).

The Tenth Circuit has held that the inquiry focuses on whether the defendant took the alleged actions with the requisite state of mind. *Id.*; *see also Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013). This state of mind "can be no less than the mens rea required of any of his subordinates [i.e., Jail employees] to commit the underlying constitutional violation." *Cox*, 800 F.3d at 1249; (citing *Estate of Booker v. Gomez*, 745 F.3d 405, 435 (10th Cir. 2014)) (internal quotation omitted). As applied to the instant case, the applicable state of mind is actual

knowledge by a prison official of an individual inmate's need for immediate medical care due to an insect bite. *See Cox,* 800 F.3d at 1249 (explaining that in jail-suicide context, for example, a plaintiff must prove "actual knowledge by a prison official of an individual inmate's substantial risk of suicide.").

With respect to failure to train claims, the Supreme Court has recognized "limited circumstances in which an allegation of a 'failure to train' can be the basis for [§ 1983 municipal] liability." *Canton*, 489 U.S. at 387. Inadequate training of officers "may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the [officers] come into contact." *Id.* at 388. The Supreme Court has held that "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see Oklahoma City v. Tuttle*, 471 U.S. 808, 822–823 (1985) (plurality opinion) (describing a "policy" of inadequate training as "nebulous" and more attenuated from the underlying constitutional violation as compared to other government policies).

2.  Analysis

The Court has already determined that Plaintiff has failed to plead sufficient facts to identify an unconstitutional policy that lead to his injury. Furthermore, even if Plaintiff had sufficiently alleged an unconstitutional policy of denying inmates medical treatment, Plaintiff's claims for supervisory liability for failure to train and supervise would fail.

Plaintiff does not allege any personal involvement by Sherriff McIntosh. Nor does Plaintiff make any allegations that would establish that the Sherriff had the requisite

culpable state of mind. Plaintiff makes only conclusory allegations about the Sherriff's failure to train and supervise. Nowhere does Plaintiff identify any specific deficiency in Sherriff McIntosh's supervision and training of employees.

Therefore, because Plaintiffs fails to establish any of the elements for supervisory liability based on a failure to train and supervise, Plaintiff's Third Claim for Relief must be dismissed.

## II. <u>CONCLUSION</u>

For the foregoing reasons, the Court ORDERS that the County Defendants' Motion to Dismiss (Doc. # 39) is GRANTED. It is

FURTHER ORDERED that the Corizon Defendants' Motion to Dismiss (Doc. # 40) is GRANTED. Plaintiff's Fourth Claim for Relief remains pending because the Corizon Defendants' Motion did not apply to that claim. It is

FURTHER ORDERED that because Defendants have not argued that Plaintiff's claims should be dismissed with prejudice and because it is not immediately apparent that any amendment would be futile, *see Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008), Plaintiff's claims are DISMISSED WITHOUT PREJUDICE. It is

FURTHER ORDERED that Plaintiff shall have up to and including April 22, 2019, to file an Amended Complaint addressing the deficiencies noted in this Order. If Plaintiff does not file an amended pleading, Plaintiff's First, Second, and Third Claims for Relief will be dismissed with prejudice.

DATED: March 25, 2019

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge